[Cite as *State v. Hall*, 2018-Ohio-1676.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | CASE NO. 2017-T-0032 |
| HARGUS DENNISON HALL, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Trumbull County Court of Common Pleas, Case No. 2015 CR 01024.

Judgment: Affirmed.

*Dennis Watkins,* Trumbull County Prosecutor, *Diane Barber* and *Ashleigh Musick,* Assistant Prosecutors, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481 (For Plaintiff-Appellee).

*Marrett W. Hanna*, 3516 Tallmadge Road, Kent, OH 44240 (For Defendant-Appellant).

DIANE V. GRENDELL, J.

{¶1} Defendant-appellant, Hargus D. Hall, appeals his conviction for a single count of second-degree Burglary following a jury trial in the Trumbull County Court of Common Pleas. The issues before this court are whether an instruction on a lesser degree of Burglary is required when there is merely "some evidence" that the defendant lacked a criminal purpose when found trespassing in another's home; whether evidence must be excluded which was not produced until the day of trial but the existence of which the defendant was aware; and whether a conviction for Burglary is unsupported

by sufficient evidence and/or against the manifest weight of the evidence where the defendant is found in another's home and the homeowner reports finding drawers opened and a tablet missing. For the following reasons, we affirm the decision of the court below.

{¶2} On January 20, 2016, Hall was indicted by the Trumbull County Grand Jury for Burglary, a felony of the second degree in violation of R.C. 2911.12(A)(2) and (D).

{¶3} On January 26, 2016, Hall entered a plea of "not guilty."

{¶4} On December 19, 2016, Hall's case was tried before a jury. The following relevant testimony was given:

{¶5} Sergeant Harold Wix of the Trumbull County Sheriff's Department testified that, on December 10, 2015, he was sent to 336 Mahan Denman Road in Mecca Township. He arrived at about 3:12 p.m. and met with the homeowner, James Hughes. Hughes had returned home to find an unknown white male in his home. Hughes provided Wix a description of the male and his license plate number.

{¶6} Sergeant Wix entered the license plate number into his police cruiser's MDT (mobile data terminal) laptop and learned that the vehicle was registered to Hall. An image of Hall appeared on the laptop screen and Hughes identified him as the person who was in his house. Wix issued a warrant for Hall's arrest.

{¶7} Sergeant Wix did not observe any signs of forced entry into the home. At the time, Hughes did not report any property missing. A couple of days later Hughes called to report a missing computer tablet.

{¶8} Sergeant Wix described the area around Mahan Denman Road as rural where ATVs (or four-wheelers) are fairly common.

2

**{¶9}** Douglas J. Machingo testified that he was familiar with Hall from high school. On December 10, 2015, Machingo was returning home from work a little after three o'clock in the afternoon when he saw Hall sitting in a car parked on Lakeshore Drive. Machingo stopped and spoke with Hall for about a minute.

**{¶10}** Patrolman Tim Parana of the Warren Police Department testified that, on December 10, 2015, he was sent to the Buckeye Apartments on Tod Avenue in response to a report of a male passed out in a vehicle in the parking lot. He arrived at about 9:45 p.m., located the vehicle, and knocked on the window to wake the occupant. The vehicle was registered to Hall, who was the occupant, and he had an active felony warrant. Parana placed Hall under arrest without incident. Detective Jolene Marcello of the Trumbull County Sheriff's Office testified that, on December 10, 2015, she heard a call for a white Cadillac with license plate GRP 2221 that had been involved in a burglary. At about 3:13 p.m. Marcello saw the vehicle travelling southbound on Bazetta Road. She was not able to effect a stop.

**{¶11}** Following Hall's arrest that evening, Detective Marcello recovered a maroon hoodie and a gray beanie-style hat from his vehicle.

**{¶12}** James Hughes testified that he lives at 336 Mahan Denman Road in Mecca Township with his girlfriend and children. On December 10, 2015, Hughes returned home from work at about 2:30 p.m. to find a white Cadillac in the driveway. He called his girlfriend to ask if she was expecting company but she was not.

**{¶13}** Hughes noticed the front door wide open and the screen door closed. "The glass in the screen door was shaking * * * like somebody was in the house moving around pretty good." There was no one in the entranceway. He noted the license plate number.

3

{¶14} A man (Hall) whom Hughes did not recognize came out of the house wearing a maroon hoodie, sweatpants, and a gray hat. He "had his hands in his pocket, little bit nervous, fidgety." Hughes asked if he could help him and he asked if Hughes had a Raptor four-wheeler for sale. Hughes said no and asked how he entered the house. Hall said the door was open. Hughes told him it was time to get out of here. They returned to their vehicles and Hughes backed up so Hall could exit the driveway. Hall asked if this was Thompson Clark Road and Hughes said no. Hall drove east toward Bazetta Road.

{¶15} After Hall's departure, Hughes contacted 911. Hughes did not see signs of forced entry. He noted that a junk drawer in the kitchen was open and so was a drawer in the master bedroom upstairs. That evening, Hughes noticed that a seven-inch Google Nexus tablet was missing from the nightstand next to the bed. Hughes presented photographs taken of the tablet's box showing the model and serial number.

{¶16} Hughes testified that his house does not have a house number posted except on the mailbox which is across the street. He described the area as rural and agreed that four-wheelers are common in that area.

{¶17} The jury returned a verdict of guilty to Burglary as charged in the Indictment.

{¶18} On March 8, 2017, a sentencing hearing was held. Hall was sentenced to a prison term of eight years.

{¶19} On April 6, 2017, Hall filed a Notice of Appeal. On appeal, he raises the following assignments of error:

{¶20} "[1.] The trial court abused its discretion when it denied the defense request for an instruction on the lesser-included offense."

4

**{¶21}** "[2.] The trial court abused its discretion when it overruled the defense objection to the admission of photographic evidence based upon unfair surprise."

**{¶22}** "[3.] The trial court abused its discretion when it denied appellant's motion for judgment of acquittal."

**{¶23}** "[4.] The jury verdict was against the manifest weight of the evidence."

**{¶24}** In his first assignment of error, Hall argues the trial court erred by denying his request for a jury instruction on the lesser included offense of Burglary in violation of R.C. 2911.12(B).[1]

**{¶25}** "When the indictment or information charges an offense, including different degrees, or if other offenses are included within the offense charged, the jury may find the defendant not guilty of the degree charged but guilty of an inferior degree thereof or lesser included offense." R.C. 2945.74; Crim.R. 31(C).

**{¶26}** "Even though an offense may be statutorily defined as a lesser included offense of another, a charge on such lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense." *State v. Thomas*, 40 Ohio St.3d 213, 533 N.E.2d 286 (1988), paragraph two of the syllabus; *State v. Wilkins*, 64 Ohio St.2d 382, 387, 415 N.E.2d 303 (1980) ("[t]he mere fact that an offense can be a lesser included offense of another offense does not mean that a court must instruct on both offenses where the greater offense is charged").

**{¶27}** "The lesser-included-offense instruction is not warranted every time 'some evidence' is presented to support the lesser offense." *State v. Trimble*, 122 Ohio St.3d

---

1. At trial, the State disputed that R.C. 2911.12(B) is a lesser included offense of R.C. 2911.12(A)(2), but has abandoned this claim on appeal.

5

297, 2009-Ohio-2961, 911 N.E.2d 242, ¶ 192. "[A] jury instruction must be given on a lesser included (or inferior-degree) offense when sufficient evidence is presented which would allow a jury to *reasonably* reject the greater offense and find the defendant guilty on a lesser included (or inferior-degree) offense." *State v. Shane*, 63 Ohio St.3d 630, 632-633, 590 N.E.2d 272 (1992).

{¶28} With respect to the standard of review, the Ohio Supreme Court has offered various pronouncements. If, under any reasonable view of the evidence – "considered in the light most favorable to defendant" – "it is possible for the trier of fact to find the defendant not guilty of the greater offense and guilty of the lesser offense, the instruction on the lesser included offense must be given." *Wilkins* at 388. Yet, "[a]n appellate court reviews a trial court's refusal to give a requested jury instruction for abuse of discretion." *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 240. Acknowledging that "[i]t is obviously difficult to reconcile these two concepts," this court has deferred to the Ohio Supreme Court's formula in *State v. Wine*, 140 Ohio St.3d 409, 2014-Ohio-3948, 18 N.E.3d 1207: "whether to include such jury instructions lies within the discretion of the trial court and depends on whether the evidence presented could reasonably support a jury finding of guilt on a particular charge." *State v. Bolden*, 11th Dist. Lake No. 2014-L-121, 2016-Ohio 4727, ¶ 51, citing *Wine* at ¶ 1.

{¶29} For the purposes of the present analysis, the difference between second degree Burglary, R.C. 2911.12(A)(2), and fourth degree Burglary, R.C. 2911.12(B), is that the greater offense requires the commission of a trespass "with purpose to commit in the habitation any criminal offense" while the lesser offense does not.

6

{¶30} Hall maintains that an instruction on fourth-degree Burglary was warranted based on the testimony of Hughes, Sergeant Wix, and Machingo. We disagree.

{¶31} Only Hughes' testimony that Hall asked if he was selling a four-wheeler and whether they were on Thompson Clark Road suggests that Hall did not enter his home with a criminal purpose. While this is some evidence that would support Hall's conviction for fourth degree Burglary, it does little that would render the jury's rejection of the evidence supporting a conviction for second degree Burglary unreasonable. Hughes also testified that Hall was moving around his house so as to shake the glass panes of the screen door, drawers were found open inside the home, and a tablet was missing. The effect of Hall's questioning is also undermined by the time of day (working hours) and the fact that no four-wheeler was present on the property.

{¶32} Hall finds support for his position in other testimony. He claims that the facts that he was wearing a hoodie and sweatpants, kept his hands in his pockets, and stood in close proximity to Hughes "begs the question of where Appellant actually tucked a seven inch tablet." Appellant's brief at 22. On the contrary, it is not difficult to imagine how a seven-inch tablet could be concealed in a hoodie and sweatpants (such clothing has been demonstrated more than adequate for concealing, for example, firearms[2]). Hall notes that Hughes testified that he was not aggressive, yet Hughes also described him as nervous and fidgety.

---

2. "Ideal for carrying your favorite compact pistol, the NRA Concealed Carry Hooded Sweatshirt gives you an extra tactical edge, because its unstructured, casual design appears incapable of concealing a heavy firearm ' but it does so with ease!" http://www.nrastore.com/nra-tactical-concealed-carry-hooded-sweatshirt (accessed April 23, 2018); "the fact is, baggy clothes mean easy concealment" and "[d]eception is the rule of thumb, and no one suspects anything when a guy has his hands in his hoodie pocket" http://www.offthegridnews.com/self-defense/how-to-pack-heat-with-absolutely-no-one-knowing/ (accessed April 23, 2018).

{¶33} Hall also cites the testimony that Sergeant Wix did not observe anything out of order and that Machingo had a normal conversation with Hall and did not notice anything in his car such as a tablet. This testimony has little, if any, probative value with respect to whether Hall entered Hughes' home with a criminal purpose. Hall recognizes that Wix' investigation was perfunctory ("do not forget the fact that the officers investigating the crime/crime scene, did not actually even conduct an investigation"). Hall's failure to ask Machingo for directions or otherwise explain his presence in the area is more telling than the fact they had a normal conversation.

{¶34} Thus, the only substantive support for the instruction on fourth degree Burglary were Hall's questions to Hughes which, given the context, appear awkward and unconvincing. It was certainly within the trial court's discretion to conclude that this testimony did not amount to anything more than "some evidence" that Hall "was simply at the wrong location." *Wine*, 140 Ohio St.3d 409, 2014-Ohio-3948, 18 N.E.3d 1207, at ¶ 21 and 26 ("[t]he law, the evidence presented, and the discretion of the trial judge play a role in whether lesser-included-offense instructions are appropriate," especially "the quality of the evidence offered").

{¶35} The first assignment of error is without merit.

{¶36} In the second assignment of error, Hughes argues that the trial court erred by allowing the State to present photographic evidence to the jury which had not been produced in discovery.

{¶37} "Upon receipt of a written demand for discovery by the defendant, * * * the prosecuting attorney shall provide copies or photographs, or permit counsel for the defendant to copy or photograph, [all photographs] related to the particular case indictment, information, or complaint, and which are material to the preparation of a

defense, or are intended for use by the prosecuting attorney as evidence at the trial * * *." Crim.R. 16(B)(3). "If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances." Crim.R. 16(L)(1).

**{¶38}** "[T]he trial court is vested with a certain amount of discretion in determining the sanction to be imposed for a party's nondisclosure of discoverable material." *State v. Parson*, 6 Ohio St.3d 442, 445, 453 N.E.2d 689 (1983). When determining the appropriate sanction for a violation of the Rule, "[a] trial court must inquire into the circumstances surrounding a discovery rule violation and, when deciding whether to impose a sanction, must impose the least severe sanction that is consistent with the purpose of the rules of discovery." (Citation omitted.) *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, syllabus.

**{¶39}** Prior to Hughes testifying at trial, the State proffered two photographic exhibits containing the model number and serial number of the tablet missing from the home which had not been produced in discovery. The State explained that, at a preliminary hearing on December 21, 2015, in central district court, Hughes stated with respect to the tablet: "I do have the model number and serial number if you need that." However, the prosecutor remarked, "no one made a note of it." A transcript of the preliminary hearing was in the possession of the defense.

**{¶40}** On the day of trial, the prosecutor asked Hughes if he could remember the serial number and he revealed that he had taken pictures of it (and the model number)

9

with his phone. The pictures were sent to the prosecutor and printed. The defense objected to the admission of the photographs, which the trial court overruled, but did not seek a continuance.

{¶41} We find no error in the admission of the photographs. The discovery violation was not willful inasmuch as Hughes' preliminary hearing testimony, "I do have the model number and serial number if you need that," does not necessarily presuppose photographs of those numbers. While the State was dilatory in following up Hughes' offer to produce the model and serial numbers, this is excusable as these numbers were irrelevant without the recovery of the tablet itself. The jury had no more (and no less) reason to believe that the model and serial numbers in the photographs actually belonged to the missing tablet than it had reason to believe Hughes' testimony that the tablet was stolen in the first place. In other words, the photographs did nothing to corroborate Hughes' testimony that a tablet was missing. Hall makes no argument as to how the defense would have benefited from having copies of the photographs in advance of trial other than to assert that, "certainly, foreknowledge of the serial numbers * * * would have benefitted Appellant in the preparation of his defense." Appellant's brief at 26.

{¶42} In the absence of demonstrable prejudice, willfulness, or surprise, there was no abuse of discretion in allowing the admission of the photographs. *State v. Wiles*, 59 Ohio St.3d 71, 80, 571 N.E.2d 97 (1991) ("no prejudice to a criminal defendant results where an objection is made at trial to the admission of nondisclosed discoverable evidence on the basis of surprise but no motion for a continuance is advanced at that time"); *accord State v. Beaver*, 11th Dist. Trumbull No. 2011-T-0037,

10

2012-Ohio-871, ¶ 49, and *State v. Heilman*, 11th Dist. Trumbull Nos. 2004-T-0133 and 2004-T-0135, 2006-Ohio-1680, ¶ 55.

{¶43} The second assignment of error is without merit.

{¶44} In the third and fourth assignments of error, Hall argues that his conviction was supported by insufficient evidence and was against the manifest weight of the evidence.

{¶45} The manifest weight of the evidence and the sufficiency of the evidence are distinct legal concepts. *State v. Elmore*, 111 Ohio St.3d 515, 2006-Ohio-6207, 857 N.E.2d 547, ¶ 44. With respect to the sufficiency of the evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

{¶46} Whereas "sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, * * * weight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson,* 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997). "In other words, a reviewing court asks whose evidence is more persuasive -- the state's or the defendant's?" *Id.* An appellate court considering whether a verdict is against the manifest weight of the evidence must consider all the evidence in the record, the reasonable inferences, the credibility of the witnesses, and whether, "in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction

11

must be reversed and a new trial ordered." *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶47} To convict Hall of second-degree Burglary it was necessary for the State to prove, beyond a reasonable doubt, that Hall, "by force, stealth, or deception, * * * [t]respass[ed] in an occupied structure * * * when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense." R.C. 2911.12(A)(2).

{¶48} Hall's argument under both assignments is essentially the same:

> [I]t appeared that Appellant was confused about the address and was looking to buy a used ATV in an area where such vehicles were prevalent. In addition, Hughes admitted that his house did not have the address displayed. Rather it appeared on the mailbox, which was across the street, not directly in front of the Hughes residence. This taken with the facts that there were no signs of forced entry, Deputy Wix's testimony that the house appeared to be in order, Hughes' testimony that he did not initially observe that anything was missing, Hughes' last minute production of a box that was allegedly at his mother's house, Machingo's testimony that he did not see anything in Appellant's car and Appellant did not seem nervous all point to the conclusion * * * that reversal is required.

Appellant's brief at 28-29.

{¶49} With respect to the sufficiency of the evidence, there is no question that the State's evidence was sufficient to support the conviction, i.e., the State presented probative evidence as to each element of the offense. The import of Hall's argument goes to the weight or persuasiveness of that evidence.

{¶50} Contrary to Hall's position, we do not find that the State's evidence weighs heavily against his conviction. The only positive evidence that Hall was lost or looking to purchase an ATV were the couple of questions he asked Hughes after being found inside Hughes' home. A purported interest in purchasing an ATV does not explain

12

Hall's entry into the home and is wholly inconsistent with the open drawers and missing tablet. Given that Hall's presence in Hughes' home was undisputed, the jury was left to consider the possibilities that he was there with a criminal purpose or that Hughes simply lied about the open drawers and missing tablet in order to have Hall prosecuted.

{¶51} Much of the evidence on which Hall relies – the house number on the mail box across the street, the lack of police investigation, and the encounter with Machingo – we find has little probative value one way or another.

{¶52} In the absence of compelling reasons to disagree with the jury's resolution of the evidence, the third and fourth assignments of error are without merit.

{¶53} For the foregoing reasons, Hall's conviction for Burglary is affirmed. Costs to be taxed against the appellant.


TIMOTHY P. CANNON, J.,

COLLEEN MARY O'TOOLE, J.,

concur.