JOURNAL ENTRY AND OPINION
{¶ 1} In August 2004, William Howard, defendant-appellant, was charged in an eight-count indictment. The first six counts were aggravated burglary, felonies of the first degree in violation of R.C. 2911.11; the seventh count was felonious assault, a felony of the second degree in violation of R.C. 2903.11; the eighth count was violation of a temporary protection order, a misdemeanor of the first degree in violation of R.C. 2919.27. A jury trial was had upon this matter, and at the conclusion of the evidence, before the issues were submitted to the jury for its consideration and verdict, the court "merged" counts two through six into count one, thereafter submitting counts one, seven and eight to the jury.[1] After deliberation, the jury returned verdicts of guilty on each of the three counts.
 {¶ 2} Appellant timely appealed the verdict; however, the State did not appear at oral argument.
 {¶ 3} Seven persons testified at trial. The first person called on behalf of the State was Shannon Woods. Woods lived across the street from the victim, and while not being personally acquainted with the victim and her husband, the appellant, she nonetheless knew who they were and recognized them on the day in question. Woods testified that she was on her front porch on the second story of her house, when she saw the victim, Angela Howard, exit the house with her children, screaming for help. She also saw appellant leave the house after that; she did not see appellant arrive at the house.
 {¶ 4} Jermaine Mosely testified that he was an acquaintance of Howard and that his employer was Howard's father. He further testified that Howard's father had sent him to Howard's house to protect her from appellant. At the relevant time, there was a temporary protection order in place that prevented appellant from being on the premises. On the day of the incident, Mosely was at Howard's residence with his four-month-old son. He testified that he was in an upstairs bedroom with some of the children when he heard Howard scream. He then turned around and saw appellant coming at him with a knife. Until that precise moment, Mosely was unaware of appellant being in the house. A fight ensued and Mosely chased appellant from the house.
 {¶ 5} Howard testified that, on the day in question, there was a temporary protection order in force. Despite this fact, earlier in the day, she had seen appellant walk through her front gate, but then turn away before walking up the front steps. She opined that this was because appellant saw Mosely in the living room with some of the children. After this incident, Howard called 9-1-1 and was on the phone with the police when she observed appellant ride by her house on his bicycle. She reported this fact to the police dispatcher. She testified that sometime after this incident, she was upstairs sitting on a bed with her son while her two daughters were downstairs. When she looked up, she saw appellant standing in the hallway. She testified that she did not give appellant permission to enter the home.
 {¶ 6} In addition to these witnesses, four police officers testified. None of them were present at the time of the alleged aggravated burglary, and hence could not in any fashion testify as to seeing appellant enter the house. More importantly, they did not testify to anything in their investigation that might have indicated how appellant entered Howard's home.[2] It is upon this glaring lapse that appellant assigns his first error.
 Sufficiency of the Evidence upon the Count of Aggravated Burglary. {¶ 7} In State v. Jenks (1991), Ohio St.3d 259, the Supreme Court of Ohio held at paragraph two of the syllabus that: "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."
 {¶ 8} Appellant argues that there is not one iota of evidence of force, stealth or deception in the evidence, nor was there any fact (other than Howard's testimony that she did not give appellant permission to enter the home) upon which one might infer the means by which appellant entered the house.
 {¶ 9} It has long been established in Ohio that the force element of an aggravated burglary charge can be accomplished through the opening of a closed but unlocked door. State v. Lane (1976), 50 Ohio App.2d 41,361 N.E.2d 535. See, also, State v. Austin, Montgomery App. No. 20445,2005-Ohio-1035 (evidence that the defendant turned a door knob of an unlocked door in order to enter an apartment was sufficient proof of forcible entry); State v. Biddlecomb (Apr. 6, 2000), Cuyahoga App. No. 76087 (entry through an open garage door at night was sufficient for stealth entry, distinguishing other cases holding that entry through open doors during the day was insufficient for stealth entry.)
 {¶ 10} In the case sub judice, while it is unknown precisely when appellant entered the house, it is clear that he was first observed in the house during the daylight hours. There was no testimony as to whether the doors were opened or closed, locked or unlocked, or whether appellant's children, who were downstairs, let him in.
 {¶ 11} Almost directly on point is this court's holding in State v.Isom (Nov. 29, 2001), Cuyahoga App. No. 78959. In Isom, the defendant's conviction for breaking and entering was reversed in a unanimous decision because the State presented no evidence that the defendant entered a garage by force, stealth or deception. In that case, precisely like the case at bar, no evidence whatsoever was adduced to show how the defendant made entry.
 {¶ 12} Here, the State proved beyond a reasonable doubt the element of trespass, that is, that appellant was present in the home without permission or legal authority. We do not, however, believe that a jury could infer from the trespass that there was force, stealth or deception. Force, stealth or deception are separate and distinct elements of the crime of aggravated burglary and in order to sustain a conviction, one of them must be proved with evidence beyond a reasonable doubt. The question "How else could he have made entry?" is not evidence.
 {¶ 13} Thus, we do not believe the jury could "infer" that the door was closed and, hence, appellant used "force" to enter. Inferences are, of course, permissible. But an inference must be based upon a fact or facts in evidence. There is no fact here that would allow a jury to infer that the door was closed. Furthermore, we do not believe that a jury could "infer" that appellant entered by "stealth" because the occupants were surprised and frightened when they first saw him on the second floor of the house. There is no nexus between the surprise of the victims and the manner and means by which appellant gained entrance. Additionally, we find without merit the argument that the "trespass" (he did not have permission and he was under a temporary protection order) proved the means and manner of entrance. Had the legislature intended that trespass alone was sufficient to complete this crime, it would have so provided.
 {¶ 14} Hence, appellant's first assignment of error is sustained, and the aggravated burglary conviction is hereby reversed and the sentence as to that charge is therefore vacated.
 Deprivation of a Right to a Fair Trial by Introduction of Evidence of a Prior Conviction {¶ 15} In appellant's second assignment of error, he contends that he was deprived of his right to a fair trial when the State was permitted to introduce evidence concerning a prior conviction for domestic violence. In general, it is the obligation of an appellant to point out where in the transcript one might locate the error alleged. App. R. 16(D). In this matter, appellant alleges that the court permitted evidence of a prior conviction for domestic violence to come before the jury, thereby depriving him of a fair trial. This court has searched the record and exhibits to find evidence of this prior conviction, and is unable to locate it. While there was some discussion on the record of a conviction, it was in relation to a preliminary motion in limine and, thus, was not before the jury. The only fact before the jury was the existence of a temporary protection order. While the order was an exhibit that was admitted, the exhibit did not reference a prior conviction. It is apparent that the State never went beyond presenting evidence of the existence of the temporary protection order, which, of course, was the single element of the crime of violation of a temporary protection order. Appellant presents no argument that this was not otherwise admissible.
 {¶ 16} Accordingly, appellant's second assignment of error is overruled.
 Ineffective Assistance of Counsel {¶ 17} In his third and final assignment of error, appellant contends that counsel was ineffective because he did not request a cautionary instruction concerning appellant's prior conviction for domestic violence and aggravated menacing, or regarding introduction of evidence of prior bad acts. Again, appellant failed to cite the portion of the record where the alleged error occurred as required by App. R. 16(D). Since the court cannot locate any portion of the transcript or any exhibit which reflects that these alleged errors were presented to the jury, this allegation of error must likewise fail.
 {¶ 18} Appellant's third assignment of error is overruled.
 Conclusion {¶ 19} The aggravated burglary conviction is reversed, the sentence as to that charge vacated, and the case remanded to the trial court to correct the conviction and sentencing journal entry to reflect the findings of this court.
This cause is remanded for further proceedings consistent with the opinion herein.
It is, therefore, ordered that appellant recover from appellee costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Cooney, P.J., and Rocco, J., Concur.
[1] Counts one through six referred to one act, but individual counts were returned for each person who was in the house at the time of the alleged act. The court, while not using the word "amend," added the names of each person allegedly present in the house at the time to the first count, and submitted to the jury only one count of aggravated burglary, one count of felonious assault and one count of violation of a temporary protection order.
[2] There was absolutely no testimony that the officers observed the results of forced entry, nor did they testify that any part of their investigation revealed how appellant entered the home.